# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE LEE LEWIS,<br><br>           Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>           Defendant. | 1:09-cv-00315 OWW GSA<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Catherine Lee Lewis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge, for findings and recommendations to the District Court.

//
//
//
//

**FACTS AND PRIOR PROCEEDINGS**[1]

In September 2006, Plaintiff filed an application alleging disability beginning December 31, 2004. AR 87-96. Her application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 26–27, 30, 33-41. ALJ James P. Berry held a hearing on December 11, 2007, and issued an order denying benefits on March 20, 2008. AR 17-23, 308-329. Thereafter, on November 4, 2008, the Appeals Council denied review. AR 6-9.

**Hearing Testimony**

ALJ Berry held a hearing on December 11, 2007, in Fresno, California. Plaintiff appeared and testified. She was represented by attorney James P. Witherow. Vocational Expert ("VE") Thomas C. Dachelet also testified. AR 308-329.

Plaintiff was born December 5, 1954. She is five feet, nine inches in height, and weighs 185 pounds. She completed twelfth grade and can read and write English. AR 312-313. Plaintiff lives with her husband and son, and the family is supported her husband's receipt of SSI benefits. AR 314.

When asked about her work history, Plaintiff indicated she last worked babysitting for her daughter about three years prior to the hearing. Her grandchildren were one year of age when she began babysitting them; they are now four years old. AR 313-314. Plaintiff does not have a history of any other regular employment. AR 314.

While Plaintiff does maintain a driver's license, she drives very little, and does not drive every day. She might drive twice a week or so, yet on most occasions, her husband or son do the driving. AR 314-315.

Plaintiff obtains medical treatment at University Medical Center and United Health Center in Kerman. At the latter, she sees Dr. Amati and is primarily treated for diabetes. The doctor also is treating her for "tremors." AR 315. Plaintiff explained that her use of a particular medical facility is directly related to her insurance coverage at the time of treatment. AR 316-317.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

With regard to diabetes, Plaintiff has been insulin dependent for fifteen years. Her blood sugar is not stabilized however. AR 317-318. When asked about the medications she is prescribed, Plaintiff noted the Tramadol and Robaxin "help [] a lot." However, side effects include drowsiness and a "rotten" feeling. AR 318-319.

When asked to describe an average day, Plaintiff indicated she gets up at about 10:00 a.m., takes her insulin and gets something to eat and has a cup of coffee. She indicated that most of her day is spent sitting inside or lying down. AR 319. Asked more specifically about her morning, she stated that she spends most of the time sitting on the couch, and indicated that her son Benjamin does "all the housework and cleaning." She "does some laundry, but it's a process of taking a long time to get it done." AR 319. Benjamin mops and sweeps the floors, cleans the bathrooms and does all the grocery shopping. AR 320-321. He also takes care of "the work on the cars and . . . anything that needs to be done like that . . .." AR 320. Plaintiff and her husband listen to the radio and talk. Her husband "had a bad heart attack" and so they are "together most of the time." Her husband can get "up and about and mov[e] around." AR 320. She indicated they "eat a lot of microwave food." AR 320. Asked specifically about an average afternoon, Plaintiff indicated she lies on the couch, sleeping or feeling bad. AR 320.

Currently, Plaintiff suffers from pain in her neck and shoulders, pain that "shoots down [her] leg," a rapid heart beat, and a feeling as though her "body is boiling." She also suffers from hot flashes and "just the feeling of feeling terrible." AR 321.

When asked how much weight she could lift and comfortably carry, Plaintiff indicated she could lift and carry a gallon of milk. AR 321. She can walk five minutes before needing to stop and rest, and can stand about fifteen minutes before needing to rest. AR 321-322. Asked to consider a typical eight-hour work day and her ability to "be on [her] feet" during that eight-hour day, Plaintiff indicated she could stand for a total of thirty minutes in an average workday. She estimated she could sit for about an hour at a time, before needing to "get up," could not sit for more than a total of two hours in an eight-hour day. AR 322-323. She reiterated that she spends most of her time lying down. AR 323.

1    Plaintiff requires assistance with personal care, bathing and dressing.  For instance, her
2 husband helps her get into and out of the bathtub. AR 323.  A neurologist she previously received
3 treatment from indicated she had neuropathy, however that was years ago.  AR 323.  Plaintiff
4 explained the neuropathy was a numbness in her feet and stated she was putting on her socks a few
5 days prior to the hearing and found there was "an M&M stuck to the bottom of [her] toe" that she
6 did not realize was there.  AR 324.

7    When asked if there were any other physical problems that affect her ability to work, Plaintiff
8 consulted her list of prescribed medications and indicated there were no additional problems.  AR
9 323-324.

10    ALJ Berry asked Plaintiff about three prescribed medications for hypoglycemia: Novalin R,
11 Novolog, and Lantus.  Plaintiff explained that she takes the Lantus and Novolog everyday, and uses
12 the Novalin R if her blood sugar does not respond to the other two medications.  AR 324.

13    When asked if she attended college, Plaintiff indicated that she took three college courses
14 over the summer about forty years ago.  More particularly, she recalled taking African history and
15 a math course.  AR 325.

16    VE Dachelet indicated that Plaintiff's previous babysitting work was considered a medium
17 physical demand, SVP 3, semi-skilled.  The skills are not transferable.  AR 326.  When asked to
18 consider a hypothetical worker of Plaintiff's age, education and work experience, with the ability to
19 lift and carry twenty pounds occasionally and ten pounds frequently, who can stand, walk and sit for
20 six hours each in an eight-hour workday, who can occasionally climb ramps and stairs, balance,
21 stoop, kneel, crouch and crawl, but cannot climb ropes, ladders or scaffolds, VE Dachelet indicated
22 that the hypothetical worker could not perform Plaintiff's past relevant work.  Nevertheless, such
23 an individual could perform other work in the national economy.  AR 326-327.  VE Dachelet stated
24 such a worker could perform the "full world of light unskilled" work.  AR 327.  Three examples of
25 such work include: bagger - census code 964; garment sorter - census code 896; and grader - census
26 code 880.  In California, there are 31,833, 34,065 and 20,878 persons, respectively, performing
27 similar work; national figures are obtained by multiplying the state figures by ten.  AR 327.

28

When asked to consider a second hypothetical scenario involving a hypothetical worker of Plaintiff's age, education and work experience, with the ability to lift and carry a gallon or approximately eight pounds, who can sit a maximum of two hours, stand for a maximum of one-half hour and walk for five minutes at a time, and who experiences drowsiness after consuming medications, VE Dachelet indicated such a hypothetical worker could not perform Plaintiff's past relevant work, nor could such an individual perform any other jobs as they exist in the national economy. AR 327-328.

**Medical Record**

The entire medical record maintained in the administrative record lodged on August 24, 2009, was reviewed by the Court. Those records relevant to the issues on appeal are summarized below. Otherwise, the medical evidence will be referenced as necessary in this Court's decision.

In March 2001, Plaintiff presented to University Medical Center claiming to have Tularemia[2] after having been referred by the county public health agency. Chest x-rays taken revealed no significant abnormality and all toxicology reports were normal. Tularemia was ruled out. Plaintiff was advised to follow up with her primary physician regarding control of her diabetes.[3] AR 261-275.

In a report dated November 18, 2004, internist Kumar R. Mohan, M.D., performed an esophagogastroduodenoscopy with biopsies. His post operative diagnoses included upper endoscopy to second part of the duodenum; no ulcerations, tumor or gastric outlet obstruction; and low grade gastritis, proximal body, most likely secondary to stasis, otherwise negative. AR 201. The pathology report following biopsy included a final diagnosis of moderate chronic gastritis, no evidence of dysplasia or malignancy, and focal Helicobacter like organisms confirmed on the Giemsa stain. AR 205.

---

[2] "Tularemia" is defined as "an infectious zoonotic disease especially of wild rabbits, rodents, humans, and some domestic animals that is caused by a bacterium (Francisella tularensis), is transmitted especially by the bites of insects or ticks or by handling infected animals, and in humans is marked by variable symptoms —called also rabbit fever." http://mw2.merriam-webster.com/dictionary/tularermia.

[3] The medical record reflects numerous physicians' notations that Plaintiff's diabetes was poorly controlled or managed.

In a follow up report dated November 19, 2004, Dr. Mohan noted his impression of moderate chronic gastritis, H. pylori positive, probable gastroparesis secondary to diabetes mellitus, hypertension and insulin dependent diabetes mellitus. Medications were prescribed to treat her symptoms. AR 199.

A March 23, 2006, cardiology study revealed that Plaintiff had mild reversibility in the anterior and inferior walls, however, the finding notes that the condition was "felt to more likely be due to artifact rather than ischemia." AR 288.

On December 4, 2006, Rosalinda Serrano, M.D., performed a comprehensive orthopedic evaluation of Plaintiff. Plaintiff's chief complaints were reported to be low back pain, diabetes and high blood pressure. AR 158. She reported her low back pain was constant, and on a scale of one to ten, assigned the pain a ten, with pain radiating into the right leg. AR 158. Dr. Serrano noted the following on physical examination: Plaintiff walked down the hallway without difficulty and sat comfortably, although she did have difficulty getting on and off the examination table (AR 159); gait was normal and an assistive device was not necessary (AR 160); general findings noted pain and tenderness in the lumbosacral spine from L2 through S1, without effusion, deformity or crepitus (AR 160); motor strength in the upper extremities and proximal lower extremities was 5/5 and 4/5 in the distal lower extremities, and grip strength was 5/5, with normal muscle bulk and tone (AR 161); sensation was decreased below both knees yet deep tendon reflexes were equal and reactive and cranial nerves were intact (AR 161). The doctor's diagnoses indicated a history of hypertension, diabetes and diabetic neuropathy, with chronic low back pain and bilateral lumbar radiculopathy. AR 161. Dr. Serrano assigned the following functional assessment in light of the diagnoses: Plaintiff could stand and/or walk for six hours in an eight-hour workday, could sit for six hours in an eight-hour workday, and did not require an assistive device; could frequently and occasionally lift and carry ten pounds, with postural limitations on bending, stooping, crouching, crawling and kneeling; climbing ladders or stairs was to be avoided, as was the operation of dangerous or moving equipment; no manipulative, visual or communicative limitations were assigned. AR 161-162.

A December 4, 2006, x-ray of the lumbosacral spine revealed disk space narrowing at L4-5 with hypertrophic spurring anteriorly, some right-sided spurring, mild anterior spurring at L1-2 and L2-3 levels, but no fracture or destructive lesion.  The impression was recorded as degenerative change particularly at the L4-5 level.  AR 163.

On December 15, 2006, Ian Ocrant, M.D., completed a Physical Residual Functional Capacity ("RFC") Assessment following a review of Plaintiff's medical records.  AR 133-140.  Dr. Ocrant determined Plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently, could stand or walk for a total of six hours in an eight-hour work day, could sit for six hours in an eight-hour workday, and was not limited with regard to pushing or pulling.  AR 134.  Plaintiff was determined to be capable of occasionally balancing, stooping, kneeling, crouching, crawling and climbing ramps or stairs; she was never to climb ladders, ropes or scaffolds.  AR 135.  Dr. Ocrant did not find any manipulative or visual limitations, nor any limitation pertaining to communication or environment.  AR 136-137.  The doctor indicated that Plaintiff's symptoms were attributable to a medically determinable impairment, but noted Plaintiff's complaints of pain are not supported by the medical evidence.  He noted Plaintiff appeared to be exaggerating her pain.  AR 138.  On April 19, 2007, Charles Fracchia, M.D., reviewed the medical evidence and affirmed Dr. Ocrant's assessment.  AR 140.

On April 19, 2007, Psychiatrist Archimedes Garcia indicated in a Psychiatric Review Technique that Plaintiff did not suffer from a medically determinable impairment.  The doctor specifically noted Plaintiff did not have a history of, nor had she been treated for or prescribed medications to treat, any psychiatric symptom.  AR 141-143.

On September 21, 2007, Plaintiff was seen by Chinyere Amadi, M.D., for complaints of chest pain.  She indicated the pain varied from mild to very severe and occasionally radiated to her back.  Plaintiff also reported occasional sweating and shaking.  Dr. Amadi's physical examination did not reveal any abnormality and Plaintiff's vital signs were normal, however, she was advised to seek further treatment at St. Agnes Hospital.  AR 216.

A progress note dated November 7, 2007, indicated Plaintiff complained of occasional hand shakiness to Dr. Amadi.  The doctor's physical examination findings were normal and no tremors

were noted. The doctor indicated that any tremors were "possibly secondary to hyperglycemia" and advised Plaintiff to take all of the medications prescribed, as she had not taken the Robaxin as prescribed. AR 224.

### ALJ's Findings

The ALJ determined that Plaintiff has the severe impairments of diabetes mellitus and degenerative disc disease. Nonetheless, the ALJ determined the severe impairments did not meet or equal any listing impairment so as to result in a disability finding. AR 19. The ALJ specifically noted that Plaintiff's "recent tremors of unknown etiology" were a slight impairment, resulting in minimal, if any, effect on her ability to work. AR 19.

Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, and to sit, stand and/or walk for six hours in an eight-hour workday, with the ability to occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl, yet must avoid climbing ladders, ropes or scaffolds. AR 19-21.

Given this RFC, the ALJ found that Plaintiff could not return to her past semiskilled medium work as a babysitter. Accordingly, the ALJ further determined Plaintiff was an individual closely approaching advanced age, with a high school education and the ability to communicate in English. In light of Plaintiff's age, education, work experience and RFC, the ALJ determined there were significant jobs existing in the national economy that Plaintiff could perform. AR 21-22. Thus, the ALJ determined Plaintiff was not disabled. AR 22-23.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record

as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). This five-step analysis can be summarized as follows: (1) determination of whether the claimant is engaged in substantial gainful activity; if so engaged, the claimant is not presumed disabled and the analysis ends; (2) if not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if not, the claimant is not presumed disabled and the analysis ends; (3) if the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations; if so, the claimant is disabled and the analysis ends; (4) if the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work; if not, the claimant is not presumed disabled and the analysis ends; and (5) if the impairment

prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the analysis ends.

Here, the Court has interpreted Plaintiff's opening brief to assert the following arguments that: (1) the ALJ erred regarding Plaintiff's credibility; (2) the ALJ erred with regard to the RFC finding; and (3) the ALJ erred at step five of the sequential analysis. (*See* Doc. 16.)

## DISCUSSION

### A. *Credibility*

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

1    The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ found that Plaintiff had two severe impairments, i.e., diabetes mellitus and degenerative disc disease. AR 19. When making his finding as to Plaintiff's RFC, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . .." AR 20. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ made the following findings regarding credibility:

> The claimant testified that she lives with her husband, who is on SSI, but he does most of the driving. She said she has had tremors for the past 5 months and was told by her doctor that they were side effects from her medications. She said the 60 units of insulin she takes every night and the Tramadol she takes for her pain are effective in controlling her symptoms, but she still feels tired and just wants to lie down. She said she has hot flashes everyday and wakes up with a fast heartbeat every morning.
> The claimant said she spends most of the day lying down, but does do laundry. She said her son does all the housework and shopping; she and her husband microwave their meals. Allegedly she can lift and carry a gallon of milk, walk 5 minutes and stand for 5 to 6 minutes at a time for a ½ hour total in a day; she can sit an hour at a time and a total of 2 hours a day. She said she needs help getting in and out of the bathtub.
> The medical evidence of record shows that in November 2004, the claimant was diagnosed with moderate chronic gastritis, possible gastroparesis secondary to diabetes mellitus, and hypertension, and was prescribed medication. There is no

>evidence of any subsequent treatment other than medication management, or any other significant related complaints.
>
>A December 2006 lumbosacral spine x-ray revealed a degenerative change at L4-5, but the sole chest x-ray was normal. The March 2006 cardiac stress/rest myocardial perfusion scan, performed because of the claimant's chest pain complaints, showed only mild reversibility in the anterior and inferior walls, but the finding was most likely related to artifact rather than ischemia.
>
>The rest of the treatment record establishes that the claimant's back pain is controlled by Tramadol and that she takes medication for post-menopausal symptoms. None of the claimant's treating sources has even addressed whether the claimant can work or not, apparently concluding that it was not an issue.
>
>An ophthalmological consultative examination produced results showing the claimant's best corrected vision is 20/20 bilaterally.
>
>A concurrent consultative examination performed by orthopedist Dr. Serrano noted bilateral lumbar radiculopathy, chronic low back pain, and histories of diabetes mellitus, hypertension and diabetic neuropathy. She concluded that the claimant lift and carry 10 pounds occasionally and sit, stand and/or walk 6 hours in an 8-hour workday with bending, stooping, crouching, crawling and kneeling occasionally and no reaching in any direction, climbing ladders or stairs, or operating dangerous or moving equipment. However, I have given Dr. Serrano's opinion little weight because it is inconsistent with the longitudinal treatment history discussed above.
>
>The State agency medical consultants concluded that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk 6 hours in an 8-hour workday with stooping, crouching, kneeling, crawling, climbing stairs and ramps and balancing occasionally; she should avoid climbing ladders, ropes, or scaffolds.

AR 20-21, internal citations omitted. Here, the ALJ did not make general findings. Rather, he identified the evidence in the record that led to his conclusion. *Dodrill v. Shalala*, 12 F.3d at 918; *Bunnell*, 947 F.2d at 345-346.

Additionally, the ALJ properly considered the overall lack of subsequent treatment beyond medical management. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ properly inferred that the claimant's pain was not as all-disabling as he reported in light of fact that the he did not seek an aggressive treatment program); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Fair v. Bowen*, 885 F.2d at 604; *Meanel v. Apfel*, 172 F. 3d 1111, 1113 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant complained of intense pain but only received minimal and "conservative" treatment). The ALJ also properly identified a lack of objective medical tests in support of Plaintiff's symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

To the degree Plaintiff contends the ALJ erred because evidence exists supporting her claim of disability, this is not the correct standard of review. Plaintiff will not prevail simply because there is evidence supporting her position. *Richardson v. Perales*, 402 U.S. at 399; *Sample v. Schweiker*,

694 F.2d 639, 642 (9th Cir. 1982). Rather, the decision of the Commissioner to deny benefits will be overturned only if it is not supported by substantial evidence or is based on legal error. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

Because the ALJ's credibility finding is supported by substantial evidence, this Court "may not engage in second-guessing." *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). In sum, the ALJ did not err and his findings are supported by substantial evidence.

### B. *The RFC Finding*

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plainly, ALJ Berry considered all of the foregoing in reaching the following RFC finding:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk 6 hours in an 8-hour workday with climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling occasionally, but no climbing ladders, ropes, or scaffolds . . .. [¶] In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . .. I have also considered opinion evidence . . ..

AR 20. The ALJ went on to explain what specific medical evidence he considered in reaching his finding. AR 20-21. Therefore, the ALJ's assessment is supported by substantial evidence and is free of legal error.

### C. *Analysis at Step Five*

At step five of the sequential analysis, an ALJ considers whether an impairment prevents the claimant from performing his or her past work, and whether the claimant can engage in other types

13

of substantial gainful work that exists in the national economy; if so, the claimant is not disabled and the analysis ends.

Here, ALJ Berry determined that Plaintiff could not perform her past relevant work as a babysitter. (AR 21.) Thus, he moved on to determine whether she could perform other work that exists in the national economy. More particularly, after determining Plaintiff was an individual closely approaching advanced age, with a high school education and the ability to communicate in English (AR 21), his findings state:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked Mr. Dachelet whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. Mr. Dachelet testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as bagger, of which there are 31,833 positions in California; garment sorter, of which there are 34,065 in California; and grader, of which there are 20,878 positions in California. Mr. Dachelet also stated that 10 times these numbers exist in the national economy.
> Pursuant to SSR 00-4p, Mr. Dachelet's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
> Based on Mr. Dachelet's testimony, I conclude that, considering the claimant's age, education, work experience and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

AR 22.

The ALJ properly performed the sequential analysis at step five. As a result, his findings are supported by substantial evidence and no legal error has occurred.

**D.**     ***Exhibits Submitted by Plaintiff***

Plaintiff has submitted a number of exhibits for this Court's consideration. (*See* Docs. 9, 17 & 20.) The Commissioner opposes the various exhibits submitted because (1) the Commissioner has not been served with a copy of the materials, (2) the record should be comprised only of those materials considered by the ALJ, and (3) Plaintiff should not be permitted to submit medical evidence that post-dates the relevant time period. (Doc. 18 at 14-15.)

Pursuant to the provisions of Title 42 of the United States Code section 405 (g), a case may be remanded to the Secretary if the new evidence submitted is material, and there is good cause for the failure to incorporate it into the record. In order to be "material," the new evidence must be probative of the claimant's condition as it existed during the relevant time period -- on or before the administrative hearing. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987). In addition, the claimant must prove to the reviewing court's satisfaction that there exists a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him." *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984). The good cause requirement is satisfied if the claimant could not have obtained the medical evidence at the time of the administrative proceeding, even though the evidence surfaces after the Secretary's final decision. *See Embry v. Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988); *Booz*, 734 F.2d at 1380.

The ALJ held the hearing on December 11, 2007, and issued his findings on March 20, 2008. AR 17-23. Plaintiff has submitted medical records for the period between January 8, 2008 and May 19, 2008. (Doc. 9.) However, this evidence is not material because it does not pertain to the relevant time period - on or before the administrative hearing of December 11, 2007. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d at 511.

Plaintiff has also submitted medical record from the period between 1997 and 2009. (Doc. 17.) This evidence is both duplicative of the evidence maintained in the administrative record and, in part, pertains to a period of time outside of the relevant time period, i.e., beyond December 11, 2007. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d at 511.

Lastly, Plaintiff has also submitted various documents pertaining to prescription records and definitions of various medical conditions, and yet more medical evidence. (Doc. 20.) Some of this evidence is already part of the administrative record lodged on August 24, 2009, and some of the evidence is duplicative of materials Plaintiff has previously filed or lodged with the Court. Again, to the degree this evidence does not pertain to the relevant time period, it is not material.

1    Notably too, Plaintiff has failed to prove there exists a reasonably probability that this
2    evidence would change the outcome had ALJ Berry had the opportunity to consider it. *Booz v.*
3    *Secretary of Health and Human Services*, 734 F.2d at 1380.
4    Hence, Plaintiff has failed to establish good cause. This Court did not review these materials
5    in consideration of Plaintiff's appeal from the ALJ's March 20, 2008, findings. Plaintiff is advised
6    that where she believes that such evidence supports a claim for disability, the proper form for
7    submitting the evidence is in the context of a new application for benefits. *Harman v. Apfel*, 211
8    F.3d 1172, 1180 (9th Cir. 2000).

## **CONCLUSION**

10   As previously noted, the mere diagnosis of an impairment is not sufficient to sustain a finding
11   of disability. *Key v. Heckler*, 754 F.2d at 1549. In this matter, the ALJ's findings are supported by
12   substantial evidence and the proper legal standards were applied. *Richardson v. Perales*, 402 U.S.
13   at 401-402; *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d at 510. Thus, this Court will
14   recommend that the ALJ's determination that Plaintiff is not disabled be upheld.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Catherine Lee Lewis.

These findings and recommendations will be submitted to the Honorable Oliver W. Wanger pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 15, 2010**          /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE